JAMES GRIFFIN *v.* COMMISSIONER OF
CORRECTION
(AC 26456)

Schaller, Bishop and Lavine, Js.

Argued September 12—officially released November 7, 2006

*H. Jeffrey Beck*, for the appellant (petitioner).

*Marjorie Allen Dauster*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, James Griffin, following the granting of his petition for certification, appeals from the judgment of the habeas court dismissing his amended petition for a writ of habeas corpus. The petitioner's sole claim on appeal is that his trial counsel was ineffective because he failed to locate, interview and call a material witness who would have provided exculpatory evidence at the petitioner's criminal trial. We affirm the judgment of the habeas court.

The following factual and procedural history is pertinent to the resolution of the petitioner's appeal. In the underlying criminal matter, the petitioner was convicted of felony murder in violation of General Statutes § 53a-54c and aiding and abetting robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-8. He was subsequently sentenced to concurrent prison terms of forty-five years and twenty years on the felony murder and the robbery charges, respectively, for a total effective sentence of forty-five years. In the petitioner's appeal to the Supreme Court, the judgment was affirmed.[1] *State* v. *Griffin*, 253 Conn. 195, 749 A.2d 1192 (2000).

In its opinion, our Supreme Court set forth the factual background as follows. "The jury reasonably could have found the following facts. In December, 1995, the [petitioner], who resided in an apartment located at 50 Button Street, New Haven, regularly purchased drugs from

---

[1] The petitioner appealed from the judgment of the trial court to the Appellate Court, and the appeal was transferred to the Supreme Court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Ian Brown, a cocaine dealer known as 'Ryder.' The [petitioner] generally contacted Ryder through Ryder's paging device when the [petitioner] wished to purchase narcotics from him. Ryder usually delivered the drugs to a location across the street from the [petitioner's] apartment. Although the [petitioner] sometimes picked up the drugs from Ryder, he frequently sent someone else to do so.

"On December 13, 1995, at approximately 6 p.m., Carlyle Herring, an acquaintance of the [petitioner], arrived at the [petitioner's] apartment. Herring, who was then fifteen years old, had been to the [petitioner's] apartment to use drugs on a few previous occasions. After engaging Herring in small talk, the [petitioner] told him about a drug dealer named Ryder, whom Herring did not know. The [petitioner] then suggested robbing Ryder of the drugs and cash that Ryder customarily carried. Specifically, the [petitioner] proposed a plan whereby he would contact Ryder to set up a drug buy, and Herring, rather than the [petitioner], would meet with Ryder, ostensibly to pick up and pay for the drugs. Instead of purchasing the drugs from Ryder, however, Herring would rob Ryder of the drugs and any money that Ryder had in his possession. The [petitioner] further explained that Ryder would be unable to identify Herring because Ryder and Herring did not know one another. After initially rejecting the [petitioner's] suggestion, Herring agreed to the robbery plan.

"The [petitioner] then left the apartment and, upon returning, informed Herring that he had contacted Ryder, who had agreed to deliver the drugs to the usual location. The [petitioner] gave Herring a .38 special revolver, and both Herring and the [petitioner] walked across the street to await Ryder's arrival. Soon thereafter, the [petitioner] saw Ryder's car approaching and pointed it out to Herring. As the car pulled up, the [petitioner] hid so that Ryder could not see him.

"Herring walked over to Ryder's car. Ryder was driving and Ira Lawrence, whom Herring also did not know, was sitting in the front passenger seat. Ryder asked Herring to identify himself. Herring stated that he was 'Coco's' little brother and that the [petitioner] had sent him to pick up the 'stuff.' Ryder, who knew Coco, identified himself to Herring, and Herring got into the back seat of Ryder's car. After driving around the block, Ryder pulled over and parked a short distance from the [petitioner's] apartment.

"The three men remained in the car, and Ryder handed Herring a plastic package containing one ounce of cocaine. When Herring did not immediately pay for the cocaine, Ryder told him to return the package and get out of the car. With the package in his possession, Herring exited the vehicle, removed the revolver from his coat pocket, put the revolver to Ryder's head and threatened to kill Ryder if he did not give Herring all of the money and drugs in his possession. Ryder complied, handing Herring two to three ounces of cocaine and several hundred dollars in cash. Herring then fired two shots, striking Ryder in the thigh and Lawrence in the chest. Ryder drove to the hospital, where Lawrence died as a result of the gunshot wound to his chest. After the shooting, Herring gave the stolen drugs and money to the [petitioner]." Id., 197–99.

Following his unsuccessful appeal, the petitioner brought his amended petition for a writ of habeas corpus claiming the ineffective assistance of trial counsel. By memorandum of decision filed February 17, 2005, the court, applying the two part test enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), dismissed the petition, finding that the petitioner did not prove that he was prejudiced by his attorney's performance, even if it was assumed arguendo that the performance was deficient. This appeal followed.

As a prelude to our discussion of the issues on appeal, we set forth our standard of review as well as a brief overview of relevant habeas corpus law. "Our standard of review in a habeas corpus proceeding challenging the effective assistance of trial counsel is well settled. Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Alvarez* v. *Commissioner of Correction*, 79 Conn. App. 847, 848, 832 A.2d 102, cert. denied, 266 Conn. 933, 837 A.2d 804 (2003).

The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. "In *Strickland* v. *Washington*, [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Citations omitted; internal quotation marks omitted.) *Minnifield* v. *Commissioner of Correction*, 62 Conn. App. 68, 70–71, 767 A.2d 1262, cert. denied, 256 Conn. 907, 772 A.2d 596 (2001). "Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to

meet either prong." *Hunnicutt* v. *Commissioner of Correction,* 83 Conn. App. 199, 206, 848 A.2d 1229, cert. denied, 270 Conn. 914, 853 A.2d 527 (2004). Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim. *Aillon* v. *Meachum,* 211 Conn. 352, 362, 559 A.2d 206 (1989).

With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction,* 80 Conn. App. 792, 799, 837 A.2d 849, cert. denied, 268 Conn. 907, 845 A.2d 413 (2004), cert. denied sub nom. *Toccaline* v. *Lantz,* 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004). With these principles in mind, we now turn to the petitioner's claim. Additional facts will be set forth as appropriate.

The petitioner's sole claim is that defense counsel's failure to interview Iesha Kyles and to call her as a witness during his criminal trial was deficient and resulted in prejudice under the *Strickland* test. We are not persuaded.

At the habeas proceeding, Kyles testified that she met Herring for the first time on December 13, 1995,

and that she never saw Herring with the petitioner beforehand. She had known the petitioner for years and was a good friend of his. She knew Ryder for a couple of months and described him as a close friend whom she had dated. She also stated that she knew that Ryder and the petitioner were drug dealers, that Ryder would deliver drugs to Button Street, and that it was not a secret that Ryder would have money on his person.

She testified that on December 13, 1995, she paged Ryder at her house. She denied doing so because the petitioner wanted drugs from him, and she denied that she told the petitioner that she had paged Ryder. Instead, she stated that she paged Ryder because she needed money. When cross-examined and confronted with a statement she gave to the police on December 16, 1995, however, Kyles changed her previous testimony and agreed that she had not told Ryder that she wanted to borrow money.

The petitioner claims that Kyles' testimony at the habeas proceeding demonstrates that he was prejudiced by his counsel's failure to call her as a witness at the criminal trial. The petitioner argues that had Kyles testified, the state's theory regarding his planning of the robbery would have been destroyed. We are unpersuaded.

As correctly noted by the habeas court in its detailed analysis of this issue, the anticipated value of Kyles' criminal trial evidence must be considered in light of all the evidence that was before the jury. This is so because the strength of the state's case is a significant factor in determining whether an alleged error caused prejudice to the petitioner. The stronger the case, the less probable it is that a particular error caused actual prejudice. *Strickland* v. *Washington*, supra, 466 U.S. 695–96. It is against this evidentiary background that

the prejudice component of *Strickland* must be examined in relation to the failure to locate, interview and call Kyles as a witness.

On the basis of our examination of the criminal trial transcript, we find no fault in the habeas court's conclusion that the petitioner failed to satisfy the prejudice prong. The evidentiary record with or without Kyles' trial testimony strongly supported the complicity of the petitioner in the robbery.

The record reveals that Herring was with the petitioner for a fairly substantial period of time before the shooting. Also, there is nothing to indicate that Herring knew or had reason to know who Ryder was, let alone that he carried large quantities of drugs or money, or that even if he had this information, he would know the type of car Ryder drove. Moreover, soon after the robbery, the police found a quantity of money near the entrance porch of the petitioner's apartment and Herring, the shooter, in the back bedroom of the petitioner's apartment.

Additionally, the jury heard testimony that Ryder, an admitted drug dealer, brought drugs to Button Street, that he changed rental cars every other week so that any particular car he drove would not be noticeable to the police and that he would not let anyone into his car or approach it for the purpose of buying drugs without some assurance of the person's identity. This evidence, if credited by the jury, amply indicated the petitioner's involvement in the matter.

Thus, we agree with the habeas court's reasoning and conclude that the petitioner has not met the prejudice component of the *Strickland* test. In light of the strength of the state's case and the questionable credibility of Kyles as found by the habeas court, the petitioner has not demonstrated that his attorney's presumed error in failing to call Kyles to testify deprived him of a fair

trial and produced an unreliable result. Therefore, the habeas petition must fail.

The judgment is affirmed.

In this opinion the other judges concurred.