ROBERT MADAGOSKI *v.* COMMISSIONER OF
CORRECTION
(AC 27142)

Flynn, C. J., and Gruendel and Foti, Js.

Argued September 20—officially released December 11, 2007

*Paul R. Kraus*, special public defender, for the appellant (petitioner).

*Frederick W. Fawcett*, supervisory assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Gerard P. Eisenman*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, C. J. The petitioner, Robert Madagoski, appeals following the denial of his petition for certification to appeal from the judgment denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion in denying certification to appeal and that it improperly concluded that his trial counsel had provided effective assistance. The petitioner also claims that he was deprived of his due process rights at the habeas proceedings and that the court improperly failed to apply the proper legal standard regarding the

preservation of evidence. We dismiss the petitioner's appeal.

The relevant facts are set forth in *State* v. *Madagoski*, 59 Conn. App. 394, 757 A.2d 47 (2000), cert. denied, 255 Conn. 924, 767 A.2d 100 (2001). "On February 11, 1997, Sergeant Thomas W. Guyette, a twenty-two year veteran of the state police who was assigned to the Connecticut auto theft task force (task force), was in Bridgeport to attend a meeting with chiefs of police. Prior to the meeting, Guyette dispatched the members of his task force group to patrol the streets of Bridgeport in search of motor vehicles that had been reported stolen within the last twenty-four hours. At approximately 11 a.m., while he was in the meeting, Guyette was contacted by John Pribesh, a Bridgeport police department detective, who reported that three stolen vehicles had been located in the vicinity of Anson and North Main Streets.

"Guyette, who was dressed in a business suit, met with members of the task force at the intersection of Anson and Salem Streets, and dispatched the officers in teams of two throughout the area. At about 4:30 p.m., Pribesh informed Guyette that he was following a stolen van on Salem Street and that he thought that the driver knew he was a police officer. Guyette ordered Leonard Schroeder, a Fairfield police department detective, to help him and Pribesh box in the van at the intersection of Salem and Main Streets. Guyette and Schroeder blocked the intersection.

"Before he got out of his vehicle, Guyette placed his police badge on the breast pocket of his coat and called the Bridgeport police department for help. When he got out of his vehicle, Guyette ran toward the van shouting, 'Police, stop!' The [petitioner], the van's sole occupant, moved the van toward Guyette and struck him on the left side. Guyette jumped over the hood of the van and landed between Schroeder's vehicle and the van. The

van struck Schroeder's vehicle, and Guyette grabbed the door handle of the van with his left hand and grabbed his weapon with his right hand. Guyette pointed his weapon at the driver and yelled, 'Police, give it up!' He had no intention of shooting the driver; his intent was to stop the vehicle. The van suddenly moved forward, twisting Guyette's leg. Guyette's weapon discharged, shattering the window on the driver's side. As the vehicle accelerated, Guyette was dragged by it and, had he not let go, he would have struck a parked car.

"The [petitioner] drove away and was not apprehended until March 7, 1997. At that time, his jacket, which had a bullet hole under the left sleeve and to the rear, was seized. A spent bullet seized from the [petitioner's] trouser pocket was determined to be the bullet that was fired from Guyette's weapon." Id., 396–98.

After a jury trial, the petitioner was convicted of attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-59 (a) (1), assault in the second degree in violation of General Statutes § 53a-60 (a) (2), assault of a peace officer in violation of General Statutes § 53a-167c (a) (1), larceny in the second degree in violation of General Statutes § 53a-123 (a) (1) and being a persistent felony offender in violation of General Statutes § 53a-40 (b) (3). The petitioner received a total effective sentence of forty-five years incarceration.

Following his unsuccessful appeal, the petitioner filed a second amended petition for a writ of habeas corpus. In his petition, the petitioner claimed that his trial counsel, Catherine Teitell, had rendered ineffective assistance[1] for failing, inter alia, to interview a witness

[1] The petitioner's ineffective assistance claim was alleged in the first count of his petition. In counts two through four, the petitioner alleged, respectively, that the state violated his due process rights because it failed to preserve the van, that the court's instructions to the jury deprived him of

and to call that witness at trial.[2] A habeas trial was held on November 16 and December 17, 2004, and on May 27, 2005. In a memorandum of decision filed October 7, 2005, the court denied the petition, concluding that Teitell had provided effective assistance. After the denial of his petition for a writ of habeas corpus, the petitioner filed a petition for certification to appeal, which was denied. This appeal followed. Additional facts will be set forth as necessary.

As a preliminary matter, we set forth the standard of review and legal principles that guide our resolution of the petitioner's appeal. "Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn. 178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, he must demonstrate that the denial of his petition for certification constituted

his right to a fair trial and that some of the trial court's evidentiary rulings violated his right to confront witnesses.

The court did not address specifically the issues raised in counts two through four in its memorandum of decision. Nevertheless, the court, in denying the petition, found in favor of the respondent commissioner of correction. The judgment file states that "[t]he court, having heard the parties, finds the issues for the respondent," and "it is adjudged that the writ of habeas corpus is denied." We conclude that the court denied the entire petition, and, therefore, there is a final judgment.

[2] The petitioner raised several other allegations in connection with his ineffective assistance claim in his second amended petition. Specifically, the petitioner claimed that his trial counsel was ineffective for failing to investigate, failing to have a forensic expert inspect the van, failing to cross-examine the state's witnesses, failing to impeach effectively the state's witnesses, failing to contest the market value of the van, failing to retain several experts, failing to develop a relevant defense theory and failing to request certain jury instructions. The petitioner, however, has not raised or briefed these issues on appeal, and, we therefore deem those aspects of the habeas petition abandoned. See *Annunziata* v. *Commissioner of Correction*, 74 Conn. App. 9, 13, 810 A.2d 287 (2002).

an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . .

"To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Internal quotation marks omitted.) *Falcon* v. *Commissioner of Correction*, 98 Conn. App. 356, 359, 908 A.2d 1130, cert. denied, 280 Conn. 948, 912 A.2d 480 (2006).

I

The petitioner first claims that the court abused its discretion with respect to his claim that he received ineffective assistance of counsel as a result of counsel's failure to interview Daniel Gonzalez, a man who lived in a building facing Salem and Main Streets, and to call him as a witness during the criminal trial. We are not persuaded.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Grant* v. *Commissioner of Correction*, 86 Conn. App. 392, 397, 861 A.2d 1191 (2004), cert. denied, 273 Conn. 903, 868 A.2d 744 (2005).

"In *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States

Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . . Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction*, 98 Conn. App. 361, 365–66, 909 A.2d 60 (2006).

The following additional facts are necessary for our resolution of the petitioner's appeal. At the habeas hearing, the petitioner called Gonzalez as a witness. Gonzalez testified that, after the incident, he was interviewed by the police and gave a written statement to the police. Gonzalez could not recall specifically the events of February 11, 1997, and, therefore, his statement to the police was admitted as a full exhibit at the habeas trial.

In his written statement, Gonzalez indicated that on February 11, 1997, he heard a gunshot, and, through his apartment window, he observed a van traveling on Salem Street. Gonzalez also stated that he witnessed the van hit two other vehicles and that he "saw [Guyette] standing alongside the driver side of the van holding onto the door handle after the accident." The statement further indicated that Gonzalez observed the van strike Guyette, causing him to fall to the ground, and, while Guyette was on the ground, the van ran over his leg. At the habeas trial, Teitell testified, in part, that she had received Gonzalez' statement prior to the petitioner's criminal trial but that she was unable to locate him. After hearing Teitell's testimony, the court concluded that Teitell had not rendered ineffective assistance.

Even if we were to assume, arguendo, that Teitell's failure to interview Gonzalez and to call him as a witness constituted deficient performance, no prejudice resulted from that deficiency. The petitioner contends that because Gonzalez' statement indicates a different sequence of events than does the testimony of Guyette, a jury "might well have doubted . . . Guyette's version, and it may have reduced his credibility more generally, including as to his claims that the [petitioner] had tried earlier to run him over."

On the basis of our review of the record, we conclude that the petitioner has failed to demonstrate that there is a reasonable probability that if Teitell had interviewed

Gonzalez and had called him as a witness, the fact finder would have had a reasonable doubt respecting the guilt of the petitioner.[3] If Gonzalez had testified at trial, his testimony, at most, would have been cumulative of other evidence. See *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 623, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999). Indeed, the petitioner acknowledges in his brief that Gonzalez' statement is consistent with the trial testimony of Pribesh.

Specifically, Pribesh testified that, after he saw Guyette fire a gunshot, he observed the van cross the intersection while Guyette was hanging from the door of the van. Pribesh also indicated that he witnessed the van strike the two vehicles and that he saw Guyette on the ground. Pribesh's testimony concerning the sequence of the events following the gunshot is consistent with Gonzalez' statement, and, therefore, we fail to see why Gonzalez' testimony was necessary to "discredit" Guyette's claims that the petitioner "had tried earlier to run him over." The petitioner has not demonstrated how he was prejudiced by Teitell's failure to call Gonzalez to testify.

Moreover, the value of having Gonzalez testify at trial "must be considered in light of all the evidence that was before the jury. This is so because the strength of the state's case is a significant factor in determining whether the alleged error caused prejudice to the petitioner. The stronger the case, the less probable it is that a particular error caused actual prejudice." *Griffin* v. *Commissioner of Correction*, supra, 98 Conn. App. 367. In the present case, the petitioner does not dispute that, with or without Gonzalez' trial testimony, the state

[3] Because we conclude that the petitioner has failed to satisfy the prejudice component of *Strickland*, we do not determine whether Teitell's failure to interview Gonzalez and to call him as a witness constituted deficient performance. See *Pierce* v. *Commissioner of Correction*, 100 Conn. App. 1, 12 n.5, 916 A.2d 864, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007).

had a strong case against him. On the basis of our review of the evidentiary record, we conclude that the petitioner has not demonstrated that Teitell's alleged deficiency produced an unreliable result. See *Strickland* v. *Washington,* supra, 466 U.S. 687.

## II

The petitioner next claims that the court abused its discretion in denying his petition for certification to appeal with respect to his claim that the state deprived him of his due process rights. In his appellate brief, the petitioner claims that the state violated his due process rights at the habeas proceedings because it failed to preserve the stolen van indefinitely after the conclusion of his criminal trial.[4] After reviewing the record, we conclude that the petitioner failed to raise this claim in his habeas petition and also that the claim does not merit serious review.

In count two of his habeas petition, the petitioner had claimed that "his conviction" was illegal because it was obtained in violation of his due process rights at the *criminal trial.* Specifically, the petitioner had alleged that *"the State's failure to preserve the minivan*

---

[4] In connection with his due process claim regarding the preservation of the van, the petitioner also argues on appeal that the habeas court improperly failed to apply the balancing test enunciated in *State* v. *Asherman,* 193 Conn. 695, 724, 478 A.2d 227 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1985), which is the test used in evaluating a claim concerning the deprivation of due process rights as a result of missing evidence. Under *Asherman,* the trial court balances the following factors: "the materiality of the missing evidence, the likelihood of mistaken interpretation of it by witnesses or the jury, the reason for its nonavailability to the defense and the prejudice to the defendant caused by the unavailability of the evidence." (Internal quotation marks omitted.) *State* v. *Morales,* 232 Conn. 707, 727, 657 A.2d 585 (1995). The petitioner urges this court to adopt a new rule in which the *Asherman* balancing test is applied to postconviction proceedings. However, because the petitioner failed to raise this issue in his habeas petition, we need not decide whether *Asherman* extends to habeas proceedings.

driven by the [p]etitioner during the incident, as material, potentially exculpatory, untested evidence, *after being requested to do so by defense counsel and ordered to do so by the trial court,* [deprived him of due process of law]." (Emphasis added.) The petitioner also had alleged that "[i]t is reasonably probable that if the exculpatory material had been tested, the results of the testing would have provided evidence favorable to the [pe]titioner, and that the *result of the trial court proceedings* would have been different." (Emphasis added.)

In contrast, during the habeas trial, in his posttrial brief to the habeas court and in his main appellate brief, the petitioner claimed that the state's failure to preserve the stolen van after the conclusion of the criminal trial deprived him of his due process rights at the *habeas* trial.[5] The petitioner contends in his reply brief on appeal that his claim concerns the deprivation of his due process rights at the habeas proceedings as a result of the state's failure to preserve the stolen van pending the resolution of his habeas petition. Additionally, in the analysis portion of the reply brief, the petitioner attempts to alter his due process claim by referring to Teitell's ineffectiveness for failing to present forensic analysis. At oral argument before this court, the petitioner asserted, for the first time, that his claim on appeal actually concerned Teitell's failure to ensure, at the conclusion of the criminal trial, that the stolen van would be preserved for future habeas proceedings.

In light of the petitioner's myriad of expressions of his claim, it is difficult to ascertain his actual claim;

---

[5] During the habeas trial, the petitioner apparently abandoned the claim regarding the violation of his due process rights at his criminal trial because he acknowledged that the state relinquished possession of the van *after* the criminal trial. Instead, the petitioner argued that the *Asherman* test also applied to due process violations occurring during postconviction proceedings.

however, none of these claims raised on appeal was raised distinctly before the habeas court. See *Copeland* v. *Warden,* 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993); see also *Oliphant* v. *Commissioner of Correction,* 80 Conn. App. 613, 618, 836 A.2d 471 (2003), cert. denied, 268 Conn. 907, 845 A.2d 412 (2004). "Furthermore, we fail to see how a court could abuse its discretion in failing to grant a petitioner certification to appeal to challenge an issue that was not first presented to the court and then ruled on by it." *Mitchell* v. *Commissioner of Correction,* 68 Conn. App. 1, 7, 790 A.2d 463, cert. denied, 260 Conn. 903, 793 A.2d 1089 (2002).

Moreover, even if the petitioner had raised these claims distinctly in his habeas petition, we nevertheless would conclude that, under the circumstances of this case, it is impractical to require that the state preserve a stolen van indefinitely beyond the conclusion of the criminal proceedings. In addition to being burdensome on the owner from whom the van was stolen, it also is a burden on the state to preserve such a vehicle, absent a granted motion requiring it do so, for its possible use in a future habeas trial.

Accordingly, we conclude that the court did not abuse its discretion because the petitioner has not shown that the issues raised with regard to the court's denial of his petition for a writ of habeas corpus are debatable among jurists of reason, that a court could resolve the issues in a different manner or that the questions raised deserve encouragement to proceed further. See *Simms* v. *Warden,* supra, 230 Conn. 616.

The appeal is dismissed.

In this opinion the other judges concurred.