### DAVID J. WEINBERG *v.* COMMISSIONER OF CORRECTION
### (AC 27897)

Bishop, Robinson and Freedman, Js.

Argued October 17, 2008—officially released January 13, 2009

*Deborah G. Stevenson,* special public defender, for the appellant (petitioner).

*Michele C. Lukban,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Robin Lipsky,* former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BISHOP, J. The petitioner, David J. Weinberg, appeals following the denial of his petition for certification to appeal from the judgment of the habeas court denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court abused its discretion in denying certification to appeal and that it improperly (1) determined that his trial counsel rendered effective assistance, (2) determined that his appellate counsel rendered effective assistance and (3) rejected his claim of actual innocence. We dismiss the petitioner's appeal.

The record reveals the following pertinent facts and history. The petitioner's conviction was affirmed by the Supreme Court on direct appeal.[1] In its opinion, the Supreme Court set forth the factual background as follows. "On the evening of August 3, 1984, Joyce Stochmal was at her home in the town of Seymour, preparing to leave for an overnight stay at her place of employment, the Silver Hills Kennel, located in the town of Ansonia. In contemplation of working at the kennel the next morning, she packed a blue gym bag with the following items: an orange Silver Hills Kennel T-shirt, a pair of Calvin Klein cut-off jeans, a bra, underpants, socks and a small zippered makeup bag containing an Estee Lauder eyeliner pencil and mascara. Stochmal left her home at approximately 10:30 p.m. and was last seen alive

---

[1] *State* v. *Weinberg,* 215 Conn. 231, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

at approximately 10:45 p.m., walking along the nearby Squantuck Road in the direction of Ansonia.

"That same night, August 3, 1984, the [petitioner] was at the Prime Time Cafe, a bar located approximately one half mile from Squantuck Road. When he left the bar, he drove along Squantuck Road where he encountered Stochmal. The [petitioner], thereafter, beat Stochmal about her head and face and stabbed her repeatedly in the back, chest and neck. After inflicting these fatal wounds, he disposed of Stochmal's body in Lake Zoar and then started a fire along the banks of the Pomperaug River where he burned the contents of Stochmal's gym bag.

"In the afternoon of the next day, August 4, 1984, the [petitioner] indicated to his girlfriend, D,[2] who had just returned from an overnight stay in New York, that he had discovered a dirt road near his place of employment and he wanted to go see what was there. D agreed to go along, and they drove in the [petitioner's] car to a secluded area along the Pomperaug River. The [petitioner] indicated that he had been at that location the night before and that his car had gotten stuck. D and the [petitioner] then got out of the car, and the [petitioner] started wading through the shallow water to cross the river. D followed him, and when they reached the opposite bank, she watched as the [petitioner] began digging through the remains of a fire. Twenty to thirty minutes later they left.

"On August 4, 1984, the [petitioner] shaved off his beard and, from that date, stopped carrying in public a knife he had previously kept in a sheath on his belt.

[2] Our Supreme Court referred to the petitioner's girlfriend by her first initial to protect her privacy. *State* v. *Weinberg*, 215 Conn. 231, 238 n.6, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990). We shall do the same.

He also removed a large sticker from the hood of his car and painted the white wheels on his car black.

"The [petitioner] became a suspect in the murder of Joyce Stochmal following a police investigation of information given to them by D. D, who has a long history of mental illness manifested in such symptoms as auditory and visual hallucinations and delusions, went to the police barracks in Southbury on August 17, 1984, to complain about the psychiatric treatment she was receiving at a particular clinic. In the course of her conversation with the police officers, she told them about the fire site to which the [petitioner] had taken her on August 4. After describing the location of the site, its surroundings, and the details of what had occurred on the afternoon she and the [petitioner] had gone there, she took the police to show them the area.

"The police seized the charred remains from the fire site. The following items were found in those remains: an orange fabric that matched the weave, composition, melting point and dye of an orange Silver Hills Kennel T-shirt; a Calvin Klein button; some Calvin Klein rivets; bra hooks and eyes; a zipper fragment consistent with those found on small makeup bags; pieces of an eyeliner pencil that matched the dye and construction of the Estee Lauder eyeliner the victim was known to have used; a twisted wire containing fibers consistent with those found on a mascara brush; charred fabric that appeared to be from a sock; and a blue fiber.

"The police interviewed the [petitioner] on August 22, 1984, concerning his activities on the night of August 3, 1984. When asked if he had seen anyone walking along the road as he had left the Prime Time Cafe, the [petitioner] volunteered that he had not driven on Squantuck Road. He explained that, due to transmission problems with his car, he had taken a route home that had fewer hills, a route police later discovered to be

6.7 miles longer than the Squantuck Road route to his home.

"After further investigation, two warrants were issued, one for the search of the [petitioner's] body and the other for the search of his residence and car. The police seized from the [petitioner's] apartment a buck knife later determined to be similar in size and configuration to the murder weapon. Seized from the trunk of the [petitioner's] car was a bloody hair fragment consistent with the unusually fine texture of the victim's hair and also a blue fiber that matched in dye and structure a fiber found in the charred remains at the fire site." *State* v. *Weinberg*, 215 Conn. 231, 233–35, 575 A.2d 1003, cert. denied, 498 U.S. 967, 111 S. Ct. 430, 112 L. Ed. 2d 413 (1990).

On November 22, 1998, after a trial to the jury, the petitioner was convicted of murder in violation of General Statutes § 53a-54a, and, as noted, his conviction was affirmed on appeal.

On October 15, 1997, the petitioner filed this petition for a writ of habeas corpus. The habeas trial was based on an amended petition dated June 6, 2003, in which the petitioner alleged that he was deprived of the effective assistance of trial and appellate counsel and that he was actually innocent. As to trial counsel, the petitioner claimed that counsel rendered ineffective assistance by (1) failing to determine whether the knife found at the petitioner's apartment could have caused the victim's wounds, (2) failing to impeach the state's key witness, (3) unnecessarily eliciting prejudicial testimony from several witnesses and (4) failing to object to inadmissible evidence and that these deficiencies rendered his conviction unreliable. As to appellate counsel, the petitioner claimed that counsel rendered ineffective assistance by failing to claim that the presumptive blood tests on both the knife recovered from his apartment

and the hairs found in his trunk were inadmissible. The petitioner separately claimed that he is actually innocent of murder. By memorandum of decision filed March 29, 2006, the court denied the petition, finding that the petitioner did not prove that he was prejudiced by his counsels' performance and that he had not proven his actual innocence. The court thereafter denied the petition for certification to appeal from its decision. This appeal followed. Additional facts will be set forth as necessary.

I

"Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion." (Internal quotation marks omitted.) *Amado* v. *Commissioner of Correction*, 110 Conn. App. 345, 347, 954 A.2d 887, cert. denied, 289 Conn. 941, 959 A.2d 1006 (2008). "To prove an abuse of discretion, the petitioner must demonstrate that the [resolution of the underlying claim involves issues that] are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." (Citations omitted.) *Newsome* v. *Commissioner of Correction*, 109 Conn. App. 159, 162, 951 A.2d 582, cert. denied, 289 Conn. 918, 957 A.2d 878 (2008). "If the petitioner succeeds in surmounting that hurdle, the petitioner must then demonstrate that the judgment of the habeas court should be reversed on its merits." *Amado* v. *Commissioner of Correction*, supra, 347. On the basis of our thorough review of the record, we conclude that the court did not abuse its discretion in denying the petition for certification to appeal.

"The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution, and by article first, § 8, of the constitution of Connecticut. In *Strickland* v.

*Washington,* [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction. . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. Accordingly, a court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim. . . .

"With respect to the prejudice component of the *Strickland* test, the petitioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." (Citations omitted; internal quotation marks omitted.) *Griffin* v. *Commissioner of Correction,* 98 Conn. App. 361, 365–66, 909 A.2d 60 (2006). In light of the teachings of this decisional law, it is clear that

the court paved no new legal ground in deciding the petitioner's claims regarding his trial counsel solely on the prejudice prong.

Because the court determined that the petitioner had not proven that he was prejudiced by the performance of his trial counsel, our focus on review is whether the court correctly determined the absence of prejudice. With the foregoing in mind, we turn to the petitioner's specific claims.

A

The petitioner first claims that trial counsel failed to disprove adequately that the knife seized from the petitioner's apartment could have caused the victim's wounds. Specifically, he argues that trial counsel's performance was deficient and prejudicial because he failed (1) to conduct independent tests on the knife seized from the petitioner's apartment, (2) to cross-examine Harold Wayne Carver II, the state's chief medical examiner, who performed the victim's autopsy, as to the measurements of the wounds and whether the petitioner's knife could have caused them and (3) to provide Elliot Gross, a defense witness and a physician, with sufficient information about the knife in evidence prior to trial.

As correctly noted by the habeas court in its detailed analysis of this issue, the evidence elicited by the petitioner at the habeas trial regarding the configuration of the knife found at the petitioner's home and its lack of correlation to the victim's wounds was not substantively different from the evidence trial counsel elicited from the medical examiner during the underlying criminal trial. Indeed, we note that the petitioner's expert on this issue, Cyril Wecht, a physician, was complimentary of trial counsel's cross-examination of the medical examiner.

On the basis of our examination of the record, we find no fault in the habeas court's conclusion that the petitioner failed to demonstrate that he had been prejudiced by his trial counsel's handling of the knife issue.

### B

The petitioner next claims that trial counsel rendered ineffective assistance by failing to impeach D. The respondent argued, and the habeas court agreed, that viewed in light of all the evidence before the jury, impeachment of D on the basis of inconsistent statements in a letter that she wrote would not have altered the jury's assessment of the petitioner's guilt.

The following additional facts relate to the petitioner's claim. During the habeas trial, Howard Weinberg, the petitioner's father, testified that after trial counsel appealed from the petitioner's conviction and lost, he retrieved the petitioner's file from trial counsel's office to deliver it to another attorney. In the process, Howard Weinberg discovered a letter in his son's file written by D in which she stated that she and the petitioner had *not* crossed the Pomperaug River to go to the fire site. During the habeas trial, the petitioner demonstrated that although trial counsel had possession of this letter prior to trial, he did not use it to impeach D regarding her testimony that she and the petitioner *had* crossed the river. In assessing this claim, the habeas court concluded, in essence, that this discrepancy regarding whether D and the petitioner had or had not crossed the river to get to the fire site was relatively unimportant, and, as a consequence, trial counsel's failure to highlight this difference did not prejudice the petitioner. We agree.

As noted by the habeas court, the trial record reveals that counsel did highlight D's psychiatric disabilities, especially her tendency to hallucinate about the petitioner, and various inconsistencies in D's testimony.

Additionally, as noted by the trial court, this statement by D in her letter regarding crossing the river was consistent with a concession she made on cross-examination that she had previously told Mary Ann Bearse, a social worker, that she had *not* crossed the Pomperaug River with the petitioner.

On the basis of our review of the record, we conclude that the petitioner has failed to demonstrate that there is a reasonable probability that if trial counsel had impeached D on the basis of the letter, the jury would have had a reasonable doubt respecting the guilt of the petitioner. Even if we were to assume arguendo that trial counsel's failure to impeach D on the basis of her inconsistent statements constituted deficient performance, we agree with the habeas court's assessment that no prejudice resulted from that deficiency. If D had been impeached on the basis of the letter, her testimony, at most, would have been cumulative of other evidence. See *Madagoski* v. *Commissioner of Correction*, 104 Conn. App. 768, 776, 936 A.2d 247 (2007) (where witness' testimony would have been cumulative of other evidence at trial, petitioner failed to show reasonable probability that fact finder would have otherwise had reasonable doubt respecting petitioner's guilt), cert. denied, 286 Conn. 905, 944 A.2d 979 (2008). We conclude, therefore, that the habeas court correctly determined that the petitioner did not demonstrate that trial counsel's alleged deficiency produced an unreliable result. See *Strickland* v. *Washington*, supra, 466 U.S. 687.

C

The petitioner also claims that trial counsel provided ineffective assistance by unnecessarily eliciting prejudicial testimony from D, from Joshua Kricker, an intern at trial counsel's law firm, and from Mary Ann Stochmal, the victim's mother. We are not persuaded.

The petitioner first argues that trial counsel elicited prejudicial testimony during his cross-examination of D. Trial counsel began his cross-examination of D by reviewing her extensive psychiatric records and history of suffering from hallucinations, including those regarding the petitioner. Trial counsel also utilized approximately fifty-five exhibits relating to D's numerous psychiatric treatments. After trial counsel elicited testimony from D that in the time period including August 3, 1984, her hallucinations were "bad all the time," he then questioned her about inconsistencies in her testimony regarding the events of August 4, 1984. D conceded that she had previously told Bearse that she and the petitioner never crossed the river. Trial counsel then noted that D had previously testified that she had first gone to the fire site, then a root beer stand and then back to her parent's house, but that she had told the police that she had gone to the fire site *after* going to the root beer stand and before going to the steel bridge. Trial counsel later asked D, "didn't you tell the state police that while you were [at the steel bridge] on the same afternoon that you had claimed you went to the campfire, that there were two young guys on the bridge and that you watched them jumping off the bridge, and you claimed that [the petitioner] wanted to jump off the bridge but you talked him out of it?" D admitted that she had made those statements and that she was "mixed up" about the sequence of events on the date in question.

The petitioner claims that because D had not mentioned during direct examination that she and the petitioner had been on the steel bridge, above where the victim's purse was later found, this damaging information was brought to the jury's attention only through trial counsel's inartful questioning of D. The petitioner contends, therefore, that D's testimony prejudiced him

by placing him at the location where a very important piece of evidence was found.

"[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." (Citation omitted.) *Peruccio* v. *Commissioner of Correction*, 107 Conn. App. 66, 84, 943 A.2d 1148, cert. denied, 287 Conn. 920, 951 A.2d 569 (2008). Here, we note the existence of substantial evidence from which the jury found the petitioner guilty, aside from the bridge testimony. Additionally, trial counsel successfully elicited from D that she had a history of hallucinations about the petitioner, that she was confused about the events on the date in question and that she had made inconsistent statements regarding the sequence of events on August 4. We conclude, therefore, that the habeas court correctly determined that the petitioner failed to demonstrate that there is a reasonable probability that if trial counsel had never elicited D's testimony regarding the steel bridge, the jury would have had a reasonable doubt respecting the guilt of the petitioner.

The petitioner next argues that trial counsel elicited damaging testimony during his direct examination of Kricker, which placed the petitioner at the site at which the incriminating evidence was found. Kricker testified that on June 1, 1985, he had interviewed D while she was at Griffin Hospital's psychiatric ward. During the interview, D told him that on August 3, 1984, she had gone to Oneonta, New York, for the night in an effort to escape the severe hallucinations from which she was suffering. She returned to Connecticut the next day. D told Kricker that on August 7, she and the petitioner had driven to the steel bridge and that the petitioner had stated a desire to jump into the water. Afterward, D told Kricker that she and the petitioner had crossed the banks of the Pomperaug River, where the petitioner went to the fire site because he wanted to make sure

that the fire was out. Kricker further testified that D told him that while she was at the river with the petitioner, "a van full of hippies" who were having a picnic were arrested during a police drug raid. She told Kricker that the petitioner's brother was there as well. Kricker also testified that D did not recall bringing the state police to that area.

Although we agree that Kricker's recitation of his interview of D bolstered evidence of the petitioner's presence at the steel bridge, this portion of the testimony was cumulative. Additionally, Kricker's testimony exposed inconsistencies in D's statements and reinforced the testimony of the petitioner's expert witness, Walter Borden, a psychiatrist, who testified that D had a tendency to reconstruct separate events to become a single event or delusion and that this was an aspect of the misidentification syndrome from which she suffered. We conclude, therefore, that whether or not it was prudent for trial counsel to elicit testimony from Kricker regarding his meeting with D, the petitioner has not demonstrated that Kricker's testimony was prejudicial to his defense. See *Mitchell* v. *Commissioner of Correction*, 109 Conn. App. 758, 766, 953 A.2d 685 (2008).

The petitioner's final argument regarding trial counsel's alleged elucidation of prejudicial testimony relates to trial counsel's direct examination of Mary Ann Stochmal. We are unpersuaded.

The record reveals that Stochmal's direct examination largely concerned matters not having a direct bearing on any significant issues in contention. As such, whatever value or lack of value there may have been in having Stochmal testify, the habeas court correctly determined that the petitioner failed to demonstrate that he was prejudiced by counsel's handling of Stochmal.

D

The petitioner next asserts that he was prejudiced by trial counsel's admitted failure to object to testimony that the petitioner had changed his personal appearance and the appearance of his car on August 4, 1984, one day after the victim's murder. We are not persuaded.

The record reveals that prior to trial, trial counsel made a motion in limine for a ruling to preclude witnesses from offering testimony concerning the petitioner's change in appearance and that of his car, following the victim's murder. The court declined to rule on the motion and indicated that it would take the matter up when the testimony went before the jury. During the trial, trial counsel did not make a timely objection when D's father testified about the petitioner's changed appearance because trial counsel's "attention had wandered." At the habeas hearing, trial counsel explained that "[c]ertainly, it was my intention to make [the objection], as I indicated before he came on the [witness] stand. I want to say that in my view, that momentary inattentiveness constitutes a sixth amendment violation."

The petitioner argues that the admission of the evidence was extremely prejudicial because the jury reasonably could infer from the testimony that the petitioner changed his appearance and the appearance of his car to mask his identity after he had killed the victim.

On the basis of our review of the record, we conclude that the petitioner cannot show prejudice under this claim because the testimony that he had changed his appearance and the appearance of his car was but one of the several pieces of evidence supporting the jury's guilty verdict. See *Peruccio* v. *Commissioner of Correction*, supra, 107 Conn. App. 84. Thus, the habeas court properly concluded that the result of the proceeding

would not have been different, even if the testimony had not been admitted. See *Carneiro* v. *Commissioner of Correction*, 109 Conn. App. 513, 519, 497 A.2d 390 (petitioner failed to show prejudice where result of proceeding would not have been different even if witness testimony had been excluded), cert. denied, 289 Conn. 936, 958 A.2d 1244 (2008). Moreover, the habeas court properly noted that the most incriminating evidence was that a blue fiber located at the fire site scientifically matched, in both dye and structure, a blue fiber found in the trunk of the petitioner's car. This blue fiber provided an additional connection between the petitioner and the scene of the murder. Additionally, hairs found in the petitioner's trunk were "microscopically similar" to the victim's hair, which was unusually fine. In light of this more compelling evidence, it is not reasonably probable that had trial counsel objected to the changed appearance testimony, the jury would have had a reasonable doubt respecting the petitioner's guilt.

It is axiomatic that in a habeas matter premised on the ineffective assistance of counsel, the petitioner must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland* v. *Washington*, supra, 466 U.S. 687. Further, "[t]he petitioner's burden of proving that a fundamental unfairness [has] been done is not met by speculation but by demonstrable realities." *Mitchell* v. *Commissioner of Correction*, supra, 109 Conn. App. 766. Finally, we note that "[t]he strength of the state's case is a significant factor in determining whether an alleged error caused prejudice to the petitioner. The stronger the case, the less probable it is that a particular error caused actual prejudice." *Griffin* v. *Commissioner of Correction*, supra, 98 Conn. App. 367. In this case, the record reflects that the habeas court correctly determined that none of the alleged acts or omissions

of trial counsel cast doubt on the reliability of the jury's verdict.

We conclude, therefore, that the habeas court did not abuse its discretion in denying the petition for certification to appeal from that court's finding that the petitioner was not prejudiced by counsel's alleged errors.

## II

The petitioner next claims that appellate counsel rendered ineffective assistance by failing (1) to challenge on appeal the admission of the presumptive blood test performed on the knife seized from his apartment and the hairs seized from the trunk of his vehicle and (2) to request supplemental briefing or reargument on this issue.

The petitioner relies on *State* v. *Moody*, 214 Conn. 616, 573 A.2d 716 (1990), in which the defendant claimed that the trial court improperly admitted testimony that a stain found on one of his shoes had yielded a positive result on a "presumptive test for blood," meaning that the stain "could be human blood, animal blood or something other than blood." Id., 628. In *Moody*, the court concluded that "the result of the presumptive test for blood had no probative value whatsoever. The test result did nothing toward establishing the likelihood of the presence of human blood on the sole of the defendant's shoe. . . . [T]hus, the trial court abused its discretion by admitting it into evidence." Id. The petitioner contends that although the *Moody* decision was released after his appeal was argued, appellate counsel had ample time to seek reargument on the basis of *Moody* and to seek permission to include the claim in a supplemental brief to the court.

Our Supreme Court has noted that to satisfy the prejudice prong of an ineffective assistance of counsel claim,

a petitioner must establish that "there is a reasonable probability that, but for appellate counsel's failure to raise the issue on appeal, the petitioner would have prevailed in his direct appeal, i.e., reversal of his conviction or granting of a new trial." *Small* v. *Commissioner of Correction*, 286 Conn. 707, 722, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

"While an appellate advocate must provide effective assistance, he is not under an obligation to raise every conceivable issue. . . . [I]t is possible to leave out a dispositive issue on appeal and nevertheless, to have furnished a petitioner with adequate counsel under the sixth amendment." (Internal quotation marks omitted.) *Bailey* v. *Commissioner of Correction*, 107 Conn. App. 362, 367, 947 A.2d 2, cert. denied, 287 Conn. 922, 951 A.2d 568 (2008).

On the basis of our review of the record, we conclude that even if appellate counsel had submitted a supplemental brief and filed a motion for reargument on the basis of *Moody*, the petitioner cannot show that it is reasonably probable that he would have prevailed on appeal. Although the *Moody* court concluded that the presumptive blood test was irrelevant, the court granted a new trial on the ground that the defendant established that the trial court's admission of the test was harmful because it misled the jury. *State* v. *Moody*, supra, 214 Conn. 627–30. The petition in this case is easily distinguishable from *Moody*. Evidence that presumptive blood was found on the knife seized from the petitioner's apartment was inconsequential because ample evidence was offered that the knife in evidence was not used to kill the victim. Further, although presumptive blood was found on the hairs seized from the petitioner's trunk, the more probative evidence was the testimony that the hairs were microscopically consistent with the victim's unusually fine hair. Thus, it is not reasonably probable that, but for appellate counsel's

presumed error, the petitioner would have prevailed in his direct appeal. We conclude, therefore, that the habeas court properly determined that the petitioner failed to show ineffective assistance of appellate counsel and did not abuse its discretion in denying the petition for certification on that ground.

### III

The petitioner finally claims that the court abused its discretion in denying his petition for certification to appeal with respect to his claim of actual innocence. Specifically, the petitioner asserts that "assuming arguendo, that newly discovered evidence is not required," he submitted "substantial and copious amounts of evidence to support his claim" of actual innocence. He further argues that "the exculpatory evidence presented, coupled with testimony that the evidence knife was not the knife or the type of knife used to cause the victim's death, sufficiently supports [his] actual innocence claim." We do not agree.

Our Supreme Court has concluded that "the proper standard for evaluating a freestanding claim of actual innocence, like that of the petitioner, is twofold. First, the petitioner must establish by clear and convincing evidence that, taking into account all of the evidence— both the evidence adduced at the original criminal trial and the evidence adduced at the habeas corpus trial— he is actually innocent of the crime of which he stands convicted. Second, the petitioner must also establish that, after considering all of that evidence and the inferences drawn therefrom as the habeas court did, no reasonable fact finder would find the petitioner guilty of the crime." *Miller* v. *Commissioner of Correction*, 242 Conn. 745, 747, 700 A.2d 1108 (1997).

Here, the court found that because the petitioner had failed to submit any newly discovered evidence, he had "failed to even make the threshold requirement by

which a claim of actual innocence may be pursued." The court concluded, therefore, that the petitioner "failed to meet his burden of proving actual innocence with clear and convincing evidence [such] that no reasonable finder of fact would conclude that the petitioner is guilty."

"Our Supreme Court has deemed the issue of whether a habeas petitioner must support his claim of actual innocence with newly discovered evidence an open question in our habeas jurisprudence. . . . This court, however, has held that a claim of actual innocence must be based on newly discovered evidence. . . . [A] writ of habeas corpus cannot issue unless the petitioner first demonstrates that the evidence put forth in support of his claim of actual innocence is newly discovered. . . . This evidentiary burden is satisfied if a petitioner can demonstrate, by a preponderance of the evidence, that the proffered evidence could not have been discovered prior to the petitioner's criminal trial by the exercise of due diligence." (Citations omitted; internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 101 Conn. App. 465, 470–71, 922 A.2d 221 (2007). We agree that the petitioner failed to offer any newly discovered evidence before the habeas court.

The petitioner contends that the testimony that the knife in evidence was not the knife or even the type of knife used to cause the victim's death sufficiently supports his actual innocence claim. Because Wecht's findings regarding the knife in evidence, however, were the same as those made by Gross and Carver in the underlying criminal trial, the petitioner has failed to present newly discovered evidence that was not available at the time of the criminal trial. See *id.*, 471.

We conclude, therefore, that the court properly denied the petition for certification to appeal from the

denial of the petition for a writ of habeas corpus with respect to his claim of actual innocence.

The appeal is dismissed.

In this opinion the other judges concurred.