# STATE OF CONNECTICUT *v.* MARCOS R. MERCADO, JR.
## (AC 34402)

Gruendel, Lavine and Borden, Js.

Argued September 6—officially released November 6, 2012

*Adele V. Patterson*, senior assistant public defender, for the appellant (defendant).

*Rocco A. Chiarenza*, deputy assistant state's attorney, with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Marcos R. Mercado, Jr., appeals from the judgment of conviction, rendered after a jury verdict, of murder in violation of General Statutes § 53a-54a, felony murder in violation of General Statutes § 53a-54c and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2).[1] On appeal,[2] the defendant claims that (1) the court abused its discretion by permitting the prosecutor to cross-examine him about prior misconduct and (2) the prosecutor's deliberate violation of the court's evidentiary order warrants reversal of his conviction. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 26, 2007, the Southington police went to the apartment of the victim, Thomas Szadkowski, at 81 Academy Street to check on his welfare, as he had not reported to work that day. The police found the victim in his kitchen, lying dead of a gunshot wound. During their search of the victim's apartment, the Southington and state police observed a number of open

---

[1] The court merged the felony murder conviction into the murder conviction and sentenced the defendant to seventy years imprisonment in the custody of the commissioner of correction.

[2] The defendant filed his appeal in the Supreme Court, which transferred it to this court pursuant to Practice Book § 65-1.

windows on the screen of the victim's computer. One window depicted an America Online instant message exchange between the defendant and the victim, which took place between approximately 8:45 and 9:45 p.m. on December 24, 2007.

The instant message screen revealed that the victim had invited the defendant to his apartment. Another open screen displayed the defendant's photograph and profile. The defendant accepted the invitation and drove to the victim's apartment. After the defendant and the victim engaged in a sexual act, the defendant retrieved a gun from his motor vehicle, returned to the victim's apartment and shot him. When he left the apartment, the defendant took the victim's Xbox 360 game console (Xbox). On December 26, 2007, the defendant gave the Xbox to a former girlfriend, Laurel Brooks, as a gift for her younger brother. The defendant was arrested at his home in New Britain on December 30, 2007. He subsequently signed a written statement and confessed, during a videotaped interview, to having shot the victim.[3]

Following his conviction of all crimes charged, the defendant filed a motion for a new trial in which he claimed that the court improperly "permitted the state to introduce testimony of . . . Brooks, concerning [the] defendant's statements to her that he had committed robberies in the past . . . ." The court denied the motion for a new trial. The defendant appealed.

The defendant's claims on appeal concern Brooks' rebuttal testimony. The following facts place the defendant's claims in context for our review.

---

[3] The defendant filed a motion to suppress his statements claiming that they were the product of police intimidation and coercion and therefore were not voluntary. The court denied the motion to suppress. Before the jury, the defendant testified that his written and videotaped statements were not the truthful product of his free will. He agreed to sign the statements to provide the police with the information they wanted in order to end the police questioning.

During the course of his investigation, Jay Suski, then a Southington police detective, took a statement from Brooks.[4] Before Brooks took the witness stand to testify during the state's case-in-chief, the defendant filed a motion in limine to preclude her from "testifying concerning the defendant's alleged past about committing crimes. The defendant submits that the *probative value of such testimony would be outweighed by the prejudicial impact.*"[5] (Emphasis added.) The court granted

[4] The relevant portion of Brooks' statement to Suski follows. "When [the defendant] was over here [on December 26, 2007], he was acting very strange. He was shaking and looked very uncomfortable. [The defendant] said he hadn't slept all night and that [he] hadn't eaten anything. [The defendant] and I were in my room talking, and he said to me, 'I did something.' I wasn't sure if he was serious, but he said it like it was something serious. I said for him not to tell me anything and that I didn't want to get dragged into whatever he was talking about. [The defendant] has talked to me in the past about committing crimes. He's talked about wanting to do robberies. He would give me details about how he would tie people up or break into their home when they weren't home—this is why I didn't want to know what he was involved in."

[5] Defense counsel, Christopher D. Eddy, argued in support of the motion in limine that he filed the motion to alert the court to anticipated testimony from Brooks pursuant to a statement she gave to Suski. Eddy stated in part, "[Brooks'] testimony may involve that the defendant had talked to her in the past about committing crimes and, quote, talked about wanting to do robberies. He would give me details about how he would tie people up or break into their homes when they weren't home.

"So, Your Honor, I think . . . under the analysis that the court will conduct determining the relevancy versus the probative value, I'm asking for a protective order that prohibits this witness from bringing that up because there has been no testimony regarding any robbery thus far, and clearly the reference that she's making in this statement is extremely vague, without specifics as well as any proximity in time to the time of December 24, 2007. I would submit to this court that this will be alarming to the jury and may cause them to have undue prejudice, if you will, and not analyze the facts of the case. So, I would ask the court to make a finding that its probative value is limited given its vagueness and the lack of specificity as well as the proximity in time to December 26, 2007, and given its limited probative value I believe that the danger of undue prejudice outweighs that."

The prosecutor responded to Eddy's argument, stating: "The context in which [Brooks is] asked about that by the police is that [the defendant] says to her, I did something, and he says it's something serious. She responds to him, I don't want to know, don't tell me, and says I don't want to be

the motion in limine with respect to the state's direct examination of Brooks. In issuing its ruling, the court also stated that "the prejudice outweighs the probative value with respect to the statement that [the defendant] has talked to me [Brooks] in the past about committing crimes. He talked about wanting to do robberies. He would give me details about how he would tie people up or break into their homes when they weren't home. And . . . [t]his is why I didn't want to know what he was involved in." The court also stated that "[n]ow, the motion is granted with respect to the testimony on direct examination. If the defense on cross-examination opens the door or upon cross-examination of the defendant, then this would not—the court's order doesn't apply."

The state offered Brooks' testimony in conformity with the court's order. After the state rested its case-in-chief, the defendant took the witness stand to present evidence of an alibi defense. He claimed that the only reason he signed the written statement was because the police "told" him to do so. See footnote 3 of this opinion. He denied having the online conversation with the victim, going to the victim's apartment, shooting the victim and knowing who caused the victim's death. During the state's cross-examination, the defendant maintained that he spent the evening of December 24, 2007, with a then girlfriend, Sally Palomino, and that he purchased the Xbox for $150 from Richard Diaz on December 25, 2007.

The prosecutor then sought permission from the court to question the defendant as to whether he had

dragged into whatever he was talking about, and it's then that she tells the police because he's talked to me in the past about these things. That's one of the reasons I didn't wish to hear it. So, I think it's probative on its own, and I also think that it's probative in the context of her response to what he's telling her, and I believe her testimony will be that she tells him on more than one occasion, I don't want to hear this."

made the statements to Brooks that were the subject of the defendant's motion in limine. See footnote 5 of this opinion. The prosecutor noted that "the motion in limine did not apply [to the defendant], it applied to . . . Brooks, but I do believe that the state has a good faith basis to inquire of [the defendant] on cross with respect to those conversations with . . . Brooks." The defendant objected, arguing that the "probative value of [the defendant's statements] would be minimal and the prejudicial impact would be great. So, in the balancing test, I believe the *prejudice outweighs the probative value.*" (Emphasis added.) The court overruled the defendant's objection, stating that "[i]t's cross-examination and the probative value outweighs the prejudice." The prosecutor continued his cross-examination of the defendant, asking if he had made statements to Brooks about committing crimes.[6] The defendant denied having done so.

During its rebuttal case, the state recalled Brooks. Brooks testified that prior to December 24, 2007, the defendant had talked to her about committing robberies.[7] The defendant did not object to the prosecutor's

---

[6] The prosecutor cross-examined the defendant in part as follows:

"Q. Now, prior to December 24 of 2007, you spoke to . . . Brooks about committing crimes. Correct?

"A. That's not true.

"Q. You talked to . . . Brooks about wanting to rob people?

"A. That's not true.

"Q. And you talked to . . . Brooks about how you'd tie people up, break into their homes?

"A. That's not true.

"Q. In fact, that's why . . . Brooks didn't want to hear any details from you on December 26 of 2007 when you told her you'd done something.

"A. This is not true."

[7] The prosecutor questioned Brooks as follows:

"Q. Ms. Brooks, did [the defendant] prior to December 24 of 2007 ever talk to you about committing crimes?

"A. Yes.

"Q. What sorts of crimes did he talk about committing?

"A. Robberies.

"Q. And would he provide you with details with respect to those?

"A. Yes.

questions, move that the testimony be stricken or ask the court to issue a limiting instruction.

On appeal, the defendant claims that the court improperly permitted the state to question him about prior misconduct because it did not fall within § 4-5 (b) of the Connecticut Code of Evidence.[8] The defendant also claims that his conviction should be reversed because the prosecutor deliberately violated the court's ruling on the motion in limine. In his brief, the defendant argues that the prosecutor was guilty of prosecutorial impropriety.[9] The defendant did not object to the prosecutor's examination of Brooks during the rebuttal portion of trial, did not seek to have her rebuttal testimony stricken, nor did he request a limiting or curative

---

"Q. What did [the defendant] tell you?

"A. Things like how he would tie victims up.

"Q. And you recall testifying here, I guess, a few days ago?

"A. Yes.

"Q. Is there a reason why when [the defendant] was talking to you on December 26 of 2007 and telling you things, why you never followed up to find out what he was talking about?

"A. Yes.

"Q. Why is that?

"A. Because I didn't want anything to do with it."

[8] Section 4-5 (b) of the Connecticut Code of Evidence provides: "Evidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove intent, identity, malice, motive, common plan or scheme, absence of mistake or accident, knowledge, a system of criminal activity, or an element of the crime, or to corroborate crucial prosecution testimony."

[9] The essence of the defendant's claim is that the jury heard evidence of alleged prior misconduct that was prejudicial to him. In ruling on the motion in limine, the court found that the portion of Brooks' statement that was the subject of the motion in limine was more prejudicial than probative and ordered that it not be presented on direct examination. The court further ordered that if, on cross-examination of Brooks or during cross-examination of the defendant's own testimony, the defendant opened the door, the court would permit the subject statements to be admitted as evidence. When the prosecutor informed the court that he intended to question the defendant about statements he had made to Brooks concerning the desire to commit crimes, the court found the statements to be more probative than prejudicial. During the prosecutor's cross-examination of the defendant, he denied having made the statements to Brooks. Brooks' rebuttal testimony contradicted the defendant's testimony.

instruction from the court. On appeal, the defendant cannot obtain review of Brooks' rebuttal testimony by labeling it prosecutorial misconduct. See *State* v. *Gooch*, 186 Conn. 17, 18, 438 A.2d 867 (1982) ("[p]utting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender"). "[O]nce identified, unpreserved evidentiary claims masquerading as constitutional claims will be summarily dismissed." *State* v. *Golding*, 213 Conn. 233, 241, 567 A.2d 823 (1989).

The standard of review for evidentiary claims is well known. "We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). Moreover, "[t]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial [also] is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted. . . .

"These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Bell*, 113 Conn. App. 25, 40, 964 A.2d 568, cert. denied, 291 Conn. 914, 969 A.2d 175 (2009). In this case, the defendant failed to object to the evidence concerning his statements

to Brooks about wanting to commit robberies on the ground that it constituted prior misconduct. The defendant's claims therefore are not reviewable.

The judgment is affirmed.

In this opinion the other judges concurred.