******************************************************

The "officially released" date that appears near the be-
ginning of each opinion is the date the opinion will be pub-
lished in the Connecticut Law Journal or the date it was
released as a slip opinion. The operative date for the be-
ginning of all time periods for filing postopinion motions
and petitions for certification is the "officially released"
date appearing in the opinion.

All opinions are subject to modification and technical
correction prior to official publication in the Connecticut
Reports and Connecticut Appellate Reports. In the event of
discrepancies between the advance release version of an
opinion and the latest version appearing in the Connecticut
Law Journal and subsequently in the Connecticut Reports
or Connecticut Appellate Reports, the latest version is to
be considered authoritative.

The syllabus and procedural history accompanying the
opinion as it appears in the Connecticut Law Journal and
bound volumes of official reports are copyrighted by the
Secretary of the State, State of Connecticut, and may not
be reproduced and distributed without the express written
permission of the Commission on Official Legal Publica-
tions, Judicial Branch, State of Connecticut.

******************************************************

MARCOS MERCADO *v.* COMMISSIONER OF
CORRECTION
(AC 39802)

Alvord, Keller and Prescott, Js.

*Syllabus*

The petitioner, who had been convicted of murder, felony murder, and robbery in the first degree, sought a writ of habeas corpus, claiming that his trial counsel had provided ineffective assistance by, inter alia, failing to object to the use of testimony elicited from the petitioner on cross-examination and from his former girlfriend, B, in the state's rebuttal, regarding whether the petitioner had acknowledged to B that he had committed certain crimes in the past. The petitioner also claimed that his trial counsel was ineffective in failing to object to evidence pertaining to the petitioner's possession of a certain assault rifle seized incident to his arrest, and failing to present testimony from a firearms expert to prove that the assault rifle was not the murder weapon. The habeas court rendered judgment denying the habeas petition on the ground that the petitioner had failed to establish that trial counsel's claimed errors prejudiced him and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal, as the petitioner failed to show that there was a reasonable probability that but for trial counsel's alleged unprofessional errors, the result of the proceeding would have been different: it was unlikely that the preclusion of the challenged evidence would have changed the result of the petitioner's criminal trial when viewed in the context of the overwhelming amount of evidence against the petitioner, including his voluntary confession to the police that he shot the victim with the assault rifle that he retrieved from the trunk of his vehicle and that he took the victim's game console, which was corroborated by forensic evidence and the testimony of, inter alia, the state's experts and B, and the petitioner could not show that if his trial counsel had presented the evidence of his own firearms expert, the result of his criminal trial would have been different, as the petitioner failed to show that such an expert would have offered any opinions in addition or contrary to those of the state's expert at his criminal trial; furthermore, the petitioner could not prevail on his claim that his trial counsel had provided ineffective assistance by failing to object to the state's recalling of B on rebuttal and to adequately preserve that issue for purposes of appellate review, as the testimony of the petitioner's criminal defense expert at the habeas trial established only that this court did not review the petitioner's claim on direct appeal because it was not preserved for appeal, and in the absence of expert testimony that this court would have reversed the petitioner's conviction had trial counsel preserved the record for appeal, the petitioner had provided no basis from which a court could find a reasonable probability that the result of his appeal would have been different.

Argued March 20—officially released July 24, 2018

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Sferrazza, J.*; judgment denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Peter Tsimbidaros*, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Brian Preleski*, state's

attorney, and *Kelli A. Masi*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

ALVORD, J. The petitioner, Marcos Mercado, appeals from the denial of his petition for certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court abused its discretion in denying his petition for certification to appeal and improperly rejected his claim that his trial counsel rendered ineffective assistance. Specifically, the petitioner claims that his trial counsel rendered ineffective assistance by failing: (1) to take appropriate measures at trial to preclude the introduction of evidence of the petitioner's prior commission of crimes; (2) to take appropriate measures to preclude, or failing to call an expert to challenge, the state's introduction of firearms and ballistics evidence; and (3) to adequately preserve an issue for appellate review. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal. Accordingly, we dismiss the appeal.

The following facts, as set forth by this court on the petitioner's direct appeal, are relevant to our resolution of the petitioner's claims. "On December 26, 2007, the Southington police went to the apartment of the victim, Thomas Szadkowski, at 81 Academy Street to check on his welfare, as he had not reported to work that day. The police found the victim in his kitchen, lying dead of a gunshot wound. During their search of the victim's apartment, the Southington and state police observed a number of open windows on the screen of the victim's computer. One window depicted an America Online instant message exchange between the [petitioner] and the victim, which took place between approximately 8:45 and 9:45 p.m. on December 24, 2007.

"The instant message screen revealed that the victim had invited the [petitioner] to his apartment. Another open screen displayed the [petitioner's] photograph and profile. The [petitioner] accepted the invitation and drove to the victim's apartment. After the [petitioner] and the victim engaged in a sexual act, the [petitioner] retrieved a gun from his motor vehicle, returned to the victim's apartment and shot him. When he left the apartment, the [petitioner] took the victim's Xbox 360 game console (Xbox). On December 26, 2007, the [petitioner] gave the Xbox to a former girlfriend, Laurel Brooks, as a gift for her younger brother. The [petitioner] was arrested at his home in New Britain on December 30, 2007. He subsequently signed a written statement and confessed, during a videotaped interview, to having shot the victim.[1]" (Footnote in original.) *State* v. *Mercado*, 139 Conn. App. 99, 100–101, 54 A.3d 633, cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

The court appointed Attorneys Christopher D. Eddy and Kenneth W. Simon to represent the petitioner. In

a substitute long form information, the state charged the petitioner with murder in violation of General Statutes § 53a-54a, felony murder in violation of General Statutes § 53a-54c, and robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). After a trial, the jury found the petitioner guilty of all three counts. The trial court, *Espinosa, J.*, merged the felony murder conviction into the murder conviction and sentenced the petitioner to a total effective sentence of seventy years incarceration on the murder and robbery charges. The petitioner appealed from the judgment of conviction, which this court affirmed. See id., 100, 107. The petitioner then petitioned for certification to our Supreme Court, which that court denied. *State* v. *Mercado*, 307 Conn. 943, 56 A.3d 951 (2012).

On March 3, 2016, the petitioner filed a third amended petition for a writ of habeas corpus, in which he alleged the ineffective assistance of his trial counsel. Specifically, as summarized by the habeas court in its memorandum of decision, the petitioner claimed that his trial counsel provided him with ineffective assistance by "failing to object, exclude, or move to limit the use of testimony elicited from the petitioner on cross-examination and from Laurel Brooks, in the state's rebuttal, regarding whether the petitioner had acknowledged to Brooks having committed robberies in the past . . . failing to object, exclude, or move to limit the use of evidence pertaining to the petitioner's possession of a .223 caliber [AR-15] Bushmaster assault rifle seized incident to his arrest . . . failing to present testimony from a firearms expert to prove that [the] Bushmaster rifle was not the murder weapon; and . . . failing to investigate adequately the possibility that Richard Diaz was the real culprit."[2]

A trial commenced before the habeas court, *Sferrazza, J.*, on October 3, 2016. The court heard testimony from Lieutenant Joseph Rainone, a Waterbury police officer who testified at the petitioner's criminal trial as a firearms expert for the state; Dr. Albert Harper, a firearms expert; Attorneys Eddy and Simon; Diaz; Carmen Baez, an investigator for the Office of the Public Defender; Attorney Sebastian DeSantis, a Connecticut criminal defense attorney; and the petitioner.

After trial, in a written memorandum of decision dated October 13, 2016, the habeas court denied the petition for a writ of habeas corpus. The court determined that the petitioner had failed to establish that trial counsel's claimed errors prejudiced him. The petitioner then filed a petition for certification to appeal, which the habeas court denied. This appeal followed.

"Faced with a habeas court's denial of a petition for certification to appeal, a petitioner can obtain appellate review of the dismissal of his petition for habeas corpus only by satisfying the two-pronged test enunciated by our Supreme Court in *Simms* v. *Warden*, 229 Conn.

178, 640 A.2d 601 (1994), and adopted in *Simms* v. *Warden*, 230 Conn. 608, 612, 646 A.2d 126 (1994). First, [the petitioner] must demonstrate that the denial of his petition for certification constituted an abuse of discretion. . . . Second, if the petitioner can show an abuse of discretion, he must then prove that the decision of the habeas court should be reversed on the merits. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, 179 Conn. App. 358, 364, 179 A.3d 794, cert. denied, 328 Conn. 919, 181 A.3d 91 (2018).

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Parrott* v. *Commissioner of Correction*, 107 Conn. App. 234, 236, 944 A.2d 437, cert. denied, 288 Conn. 912, 954 A.2d 184 (2008).

"In order to establish an ineffective assistance of counsel claim a petitioner must meet the two-pronged test enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Specifically, the claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . Because both prongs of *Strickland* must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." (Citation omitted; internal quotation marks omitted.) *Hall* v. *Commissioner of Correction*, 152 Conn. App. 601, 608, 99 A.3d 1200, cert. denied, 314 Conn. 950, 103 A.3d 979 (2014). "[A] court need not determine the deficiency of counsel's performance if consideration of the prejudice prong will be dispositive of the ineffectiveness claim."

(Internal quotation marks omitted.) *Parrott* v. *Commissioner of Correction*, supra, 107 Conn. App. 237.

The petitioner contends on appeal that the habeas court abused its discretion in denying his petition for certification to appeal because his trial counsel rendered ineffective assistance in three respects. He first claims that trial counsel was ineffective in "failing to take appropriate measures to preclude the admission of the highly prejudicial evidence of Mr. Mercado's prior commission of crimes." Specifically, he argues that trial counsel "did not adequately object" when the state elicited testimony from the petitioner at his criminal trial regarding statements he allegedly made to Brooks about committing crimes in the past,[3] and "did not adequately object" when the state recalled Brooks on rebuttal.[4]

The petitioner's second claim is that trial counsel was ineffective in failing to take appropriate measures to preclude, or failing to call an expert to challenge, the state's introduction of firearms and ballistics evidence. Specifically, he argues that trial counsel did not "take appropriate measures to preclude the introduction of highly prejudicial irrelevant evidence, including the .223 caliber AR-15 Bushmaster assault [rifle] seized from [the petitioner's] home, two .22 caliber bullets, and references to a conversion kit which would not have rendered the AR-15 Bushmaster capable of firing .22 caliber bullets." He further argues that trial counsel was ineffective in failing to introduce expert testimony to establish that "the conversion kit the state alleged Mr. Mercado possessed did not render the .223 caliber AR-15 Bushmaster weapon capable of firing the fatal bullet." The petitioner contends that these errors "provided a basis for the jury to convict the [petitioner] on side issues."

Finally, and closely related to his first claim, the petitioner claims that by failing to object to the state's recalling of Brooks on rebuttal, trial counsel "failed to adequately preserve [the] issue for purposes of appellate review." He notes that, on direct appeal of his conviction to this court, this court declined to review his claims related to the admission of Brooks' testimony because "the issue had not been properly preserved by trial [counsel] during the criminal proceeding." See footnote 4 of this opinion. He contends that "his conviction would have been overturned had trial [counsel] preserved the issue properly." We address the petitioner's claims together.

"Because the court determined that the petitioner had not proven that he was prejudiced by the performance of his trial counsel, our focus on review is whether the court correctly determined the absence of prejudice." *Weinberg* v. *Commissioner of Correction*, 112 Conn. App. 100, 108, 962 A.2d 155, cert. denied, 291 Conn. 904, 967 A.2d 1221 (2009). "With respect to the prejudice component of the *Strickland* test, the peti-

tioner must demonstrate that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. . . . It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) Id., 107.

We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal. The petitioner failed to satisfy his burden of showing a reasonable probability that had trial counsel objected to the complained of evidence, or presented the testimony of a firearms expert, the fact finder would have had a reasonable doubt respecting guilt. Notably, the petitioner presented no support for his contention that "the jury did not consider the evidence overwhelming" beyond the fact that the jury deliberated for four days before reaching a verdict.[5] Upon review, nothing in the record suggests that but for the claimed errors of trial counsel, the result of the trial would have been different.[6]

We note that "[t]he strength of the state's case is a significant factor in determining whether an alleged error caused prejudice to the petitioner. The stronger the case, the less probable it is that a particular error caused actual prejudice." (Internal quotation marks omitted.) *Weinberg* v. *Commissioner of Correction*, supra, 112 Conn. App. 115. As the habeas court rightfully concluded, the state's case against the petitioner included an "overwhelming" amount of forensic evidence and testimony to support a finding of guilt. That evidence included: (1) physical evidence at the crime scene that "largely corresponded" with details supplied by the petitioner in his voluntary confession;[7] (2) Brooks' testimony that the petitioner brought her an Xbox, without its box, on December 26, 2007, which she later gave to Detective Jay Suski of the Southington Police Department; (3) testimony of Officer Michael David Kahn, a systems administrator for the town of Southington, that Xbox serial numbers are unique to each unit; (4) Detective Suski's testimony that the serial number on the Xbox seized from Brooks' home matched the serial number listed on a receipt seized from the victim's home; (5) Brooks' testimony that when the petitioner visited her on December 26, he was exhibiting strange behavior, including physically shaking; (6) Brooks' testimony that during that visit, the petitioner told her he had "done something," and that "there was

a witness, but there's not anymore," and then asked "how come it doesn't bother him"; (7) Lieutenant Rainone's testimony that upon comparing a .22 caliber bullet recovered in the petitioner's backyard, where the petitioner engaged in target shooting, with the .22 caliber bullet removed from the victim's head, he determined that the two bullets were fired from the same gun; (8) Lieutenant Rainone's testimony that, although the .223 caliber AR-15 seized from the petitioner's home was incapable of firing a .22 caliber bullet, it could be modified to fire a .22 caliber bullet; (9) evidence that demonstrated that the petitioner had access to both .22 caliber firearms, as well as adapters capable of allowing the seized AR-15 to fire a .22 caliber bullet; (10) images of messages exchanged between screen names associated with the petitioner and the victim,[8] showing that the petitioner had communicated with the victim on the evening of December 24, 2007, and arranged to meet at the victim's home; (11) forensic analysis of the petitioner's and the victim's computers confirming that communication occurred between the petitioner and the victim on December 24, 2007; (12) testimony of Diaz, whom the petitioner attempted to portray as the perpetrator of the crimes here, regarding his verifiable alibi on Christmas Eve, 2007;[9] and (13) Diaz' testimony that when he visited the petitioner while the petitioner was incarcerated prior to his trial, the petitioner confessed to him that "he did it."

Perhaps most significantly, the petitioner also voluntarily confessed to killing the victim and then taking his Xbox.[10] In a voluntary statement given to Lieutenant James P. Wardwell of the New Britain Police Department, the petitioner confessed to communicating with the victim on the evening of December 24, 2007, via America Online instant messenger, arranging to meet the victim at the victim's home so that the petitioner could perform a sexual act on the victim, visiting the victim's home soon after arranging the meeting, performing the agreed upon sexual act on the victim, and then shooting the victim with an AR-15 that he retrieved from the trunk of his vehicle. As the habeas court noted, that confession was video recorded. At the petitioner's criminal trial, both an audio-visual recording and a transcript of the confession were admitted as full exhibits. When considered in light of the petitioner's detailed, and largely corroborated confession, it is difficult to imagine how trial counsel's claimed errors caused him to suffer prejudice. See *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 866, 877 A.2d 11 (agreeing with habeas court's conclusion that even if trial counsel should have objected to witness' testimony regarding petitioner's post-*Miranda* silence, petitioner was not prejudiced as result of counsel's failure to do so because state had already elicited testimony that petitioner twice confessed to killing victim), cert. denied, 275 Conn. 905, 882 A.2d 672 (2005).

We agree with the habeas court that the inculpatory evidence against the petitioner was "overwhelming and rooted in the petitioner's voluntary confession, which the jury had . . . occasion to review visually and audibly. The specifics of that confession were corroborated in every salient respect by forensic evidence and testimony. The purported deficiencies of defense counsel were truly insignificant when weighed against the evidence that supported the jury's verdict." Viewed in the context of this overwhelming amount of evidence against him, it is unlikely that preclusion of the challenged evidence would have changed the result of the petitioner's criminal trial. See, e.g., *Arthur* v. *Commissioner of Correction*, 162 Conn. App. 606, 624, 131 A.3d 1267 ("we conclude on the basis of our review of the evidence that the petitioner cannot demonstrate prejudice because the [challenged] evidence was not significant to the state's case"), cert. denied, 323 Conn. 915, 149 A.3d 496 (2016); cf. *Eubanks* v. *Commissioner of Correction*, 166 Conn. App. 1, 21, 140 A.3d 402 ("the failure of the petitioner's trial counsel to object to the admission of [the witness'] . . . testimony on hearsay grounds prejudiced the petitioner because when the corroborating evidence is viewed in the absence of the substantive use of that testimony, there is very little evidence to support the petitioner's conviction"), cert. granted, 323 Conn. 911, 149 A.3d 980 (2016).

It is also unlikely that had trial counsel presented the testimony of a firearms expert, the jury would have had a reasonable doubt concerning guilt.[11] As the habeas court concluded: "The prosecution's *own* expert testified before the jury that the Bushmaster, in the condition in which it was found, could *not* have fired the deadly shot. Both the fatal bullet and the bullet recovered from the petitioner's backyard were fired out of the same barrel, but that barrel was not the one present on the Bushmaster found at the petitioner's residence." (Emphasis in original.) On the basis of this, the court found that "[t]he jury was completely educated by the state's expert to the precise facts about which a defense expert might testify."

We agree with the habeas court's determination that, because the petitioner failed to show that an expert would have offered any opinions in addition or contrary to those of the state's expert at his criminal trial, he could not show that if trial counsel had presented the evidence of his own expert, the result of his criminal trial would have been different. The petitioner, therefore, failed to show that he was prejudiced by trial counsel's failure to present cumulative expert testimony. See, e.g., *Hall* v. *Commissioner of Correction*, supra, 152 Conn. App. 610 ("[b]ecause the videotape was merely cumulative of the testimony of numerous eyewitnesses who identified the petitioner as the [perpetrator], the petitioner cannot show that as a result

of his trial counsel's deficient performance, there remains a probability sufficient to undermine confidence in the verdict that resulted in his appeal" [internal quotation marks omitted]); *Weinberg* v. *Commissioner of Correction*, supra, 112 Conn. App. 108 (affirming habeas court's conclusion that petitioner had failed to demonstrate that he was prejudiced by trial counsel's failure "to disprove adequately that the knife seized from the petitioner's apartment could have caused the victim's wounds," on the basis that petitioner's evidence at habeas trial regarding knife "was not substantively different from the evidence trial counsel elicited from the medical examiner during the underlying criminal trial"); *Madagoski* v. *Commissioner of Correction*, 104 Conn. App. 768, 775-76, 936 A.2d 247 (2007) (concluding that petitioner failed to demonstrate that fact finder would have reasonable doubt as to petitioner's guilt if trial counsel had interviewed and called potential witness, because "his testimony, at most, would have been cumulative of other evidence"), cert. denied, 286 Conn. 905, 944 A.2d 979 (2008).

Finally, with respect to the petitioner's claim that trial counsel failed to preserve an issue for appeal, the petitioner has failed to satisfy his burden of showing a reasonable probability that, had trial counsel objected to Brooks' testimony, his conviction would have been overturned on appeal. The habeas court rejected the petitioner's argument that but for trial counsel's alleged errors, the outcome of his appeal would have been different. The petitioner, in his brief to this court, argues that he has shown prejudice by pointing to the trial court's "threshold determination in granting the [petitioner's] motion in limine that the evidence was indeed prejudicial," and "the expert legal testimony introduced at the habeas trial." Upon review of the record, however, it is clear that Attorney DeSantis' testimony to which the petitioner refers establishes only that this court did not review the petitioner's claim on direct appeal because it was not preserved for appeal, which is not in dispute.

A further review of Attorney DeSantis' testimony reveals that he testified only that a reasonably competent attorney would have objected to the state's attempt to ask the petitioner about his "other crimes" conversation with Brooks, which, if sustained, would have had the effect of precluding "other crimes testimony" from Brooks. He further testified that if the objection were overruled, it would have preserved the record for appeal. At no time did Attorney DeSantis testify that had trial counsel preserved the record for appeal, this court would have reversed the petitioner's conviction. Therefore, in light of the fact that the petitioner has provided no basis from which a court could find a reasonable probability that the result of his appeal would have been different, we agree with the habeas court's finding that the petitioner failed to prove that

he was prejudiced by this claimed error.

Simply put, even if we were to determine that trial counsel's performance was deficient, in light of our review of the record and the sheer strength of the state's case against the petitioner, we conclude that the petitioner's claim that the result of his criminal proceedings would have been different is highly speculative at best.[12] The petitioner has failed to demonstrate that the issues raised are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions deserve encouragement to proceed further. Accordingly, the habeas court did not abuse its discretion in denying the petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] "The [petitioner] filed a motion to suppress his statements claiming that they were the product of police intimidation and coercion and therefore were not voluntary. The court denied the motion to suppress. Before the jury, the [petitioner] testified that his written and videotaped statements were not the truthful product of his free will. He agreed to sign the statements to provide the police with the information they wanted in order to end the police questioning." *State* v. *Mercado*, 139 Conn. App. 99, 101 n.3, 54 A.3d 633, cert. denied, 307 Conn. 943, 56 A.3d 951 (2012).

[2] Diaz is the petitioner's cousin.

[3] On January 1, 2008, Brooks gave a voluntary statement to Detective Jay Suski of the Southington Police Department, in which she stated: "Marcos has talked to me in the past about committing crimes. He's talked about wanting to do robberies. He would give me details about how he would tie people up or break into their home when they weren't home."

[4] Before the state called Brooks to testify during its case-in-chief, trial counsel filed a motion in limine to preclude her from "testifying concerning the [petitioner's] alleged past about committing crimes." (Internal quotation marks omitted.) *State* v. *Mercado*, supra, 139 Conn. App. 102. Trial counsel argued that the probative value of such testimony would be outweighed by its prejudicial effect. Id. The trial court granted the motion in limine with respect to the state's direct examination of Brooks, finding that "the prejudice outweighs the probative value with respect to the statement that [the petitioner] has talked to me [Brooks] in the past about committing crimes." (Internal quotation marks omitted.) Id., 102–103. The court, however, explicitly noted that "the motion is granted *with respect to the testimony on direct examination. If the defense on cross-examination opens the door or upon cross-examination of the* [*petitioner*], then this would not—the court's order doesn't apply." (Emphasis added; internal quotation marks omitted.) Id., 103.

The state offered Brooks' testimony in conformity with the court's order. Id. On cross-examination of the petitioner, the state requested permission from the court to question the petitioner about whether he had made these statements to Brooks. Id., 103–104. Trial counsel objected, arguing that the probative value of the petitioner's statements were outweighed by their prejudicial effect. Id., 104. The court overruled the objection, and the state questioned the petitioner about these statements. Id. The petitioner denied making the statements. Id. During its rebuttal case, the state recalled Brooks, and elicited testimony regarding these statements. Id. Trial counsel did not object to recalling Brooks or her resulting testimony. Id., 104–105.

On direct appeal to this court, the petitioner claimed that (1) the trial court abused its discretion by permitting the prosecutor to cross-examine him about prior misconduct that did not fall within the exception governing admissibility of prior misconduct evidence contained in § 4-5 (b) of the 2009 edition of the Connecticut Code of Evidence, now § 4-5 (c), and (2) the prosecutor's "deliberate violation" of the court's ruling on the motion in limine while examining Brooks on rebuttal warranted reversal of his conviction. See id., 100, 105. With respect to the first claim, this court concluded that because trial counsel objected to the state eliciting this testimony only on the basis that the evidence was more prejudicial than probative, not that

it constituted inadmissible prior misconduct, the claim was not preserved for appeal. Id., 104, 106–107. With respect to the second claim, this court concluded that because trial counsel did not object to the state's examination of Brooks on rebuttal, seek to have her rebuttal testimony stricken, or request a limiting or curative instruction, that claim was likewise unpreserved for appeal. Id., 105–106. This court declined to review those unpreserved evidentiary claims and affirmed the judgment of the trial court. Id., 107.

[5] The petitioner argues that "the record reveals the jury considered Brooks' testimony central to its determination of guilt since the jury sought portions of her testimony played back." The record reveals that the jury did in fact request that one segment of Brooks' testimony be played back during its deliberations but, as stated by the trial court, requested only: "Can we hear Laurel Brooks' *initial testimony March 3rd*. That's number one. Number two: Can we see the letter that Marcos wrote to Laurel?" (Emphasis added.) The first request related to Brooks' testimony during the state's case-in-chief, and the second referred to a letter that was marked for identification during the trial. The court accommodated the first request, but denied the second. Notably, Brooks did not testify during the state's case-in-chief regarding the petitioner's prior commission of crimes; she did so only when the state recalled her on rebuttal. The record does not reflect that the jury, at any time, requested playback of Brooks' testimony on rebuttal. We therefore reject this argument as unsupported by the record.

[6] In his brief to this court, the petitioner repeatedly refers to the trial court's "threshold determination" that the evidence regarding his alleged statements to Brooks was prejudicial. He argues that "[t]he criminal trial court as a threshold matter determined the prejudice to the [petitioner] of this evidence outweighed its probative value in granting [trial counsel's] motion in limine to preclude this evidence. Therefore, this evidence has already been deemed prejudicial by the judge who actually presided over the criminal trial." According to the petitioner, "the prejudicial nature of the evidence has been established."

The petitioner appears to conflate a determination by the trial court that a piece of evidence is prejudicial with a determination of prejudice, in the context of an ineffective assistance claim, pursuant to *Strickland*. As the petitioner correctly notes, "[e]vidence is prejudicial when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *State* v. *Reynolds*, 152 Conn. App. 318, 326, 97 A.3d 999, cert. denied, 314 Conn. 934, 102 A.3d 85 (2014). In the context of an ineffective assistance claim, however, for a petitioner to satisfy his burden of proving that he was prejudiced by counsel's deficient performance, "[i]t is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings. . . . Rather, [t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Weinberg* v. *Commissioner of Correction*, supra, 112 Conn. App. 107. These inquiries are distinct. We therefore reject the petitioner's argument that prejudice was established at the trial court because the court granted his motion in limine.

[7] For example, in the petitioner's voluntary statement to Lieutenant James P. Wardwell, the petitioner confessed to shooting the victim a single time "around his face," dragging the victim's body from the living room to the kitchen, covering the victim's face with a cloth, and pouring "soap or something" all around the victim's body. Those details were corroborated by evidence that the victim died of a single shot to the head, which went from front to back, a "contact transfer blood pattern blood-like stain" between the living room and kitchen, what appeared to be a pillow burned over the face of the victim, and "an Arm and Hammer-type of liquid, blue liquid that was poured on the [victim]," as well as the laundry detergent bottle recovered near the victim's body.

[8] In the petitioner's voluntary statement to Lieutenant James P. Wardwell, he admitted to using the screen name "Marcos Mercado, Jr."

[9] Specifically, at the criminal trial, Diaz testified that on December 24, 2007, he went to church with his wife and his daughter around 6 p.m. Because it was Christmas Eve, the church was full of other parishioners. Following the church service, he, his wife, and his daughter celebrated Christmas Eve with his mother-in-law and father-in-law at their house. He, his wife, and his daughter returned to their apartment in Southington around 1 a.m. on Christmas morning.

His testimony at the habeas trial was largely consistent with his prior

testimony at the criminal trial. The habeas court found Diaz' testimony to be "very credible, including his statement that his cousin, the petitioner, admitted to him that he killed the victim." "[T]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Mourning* v. *Commissioner of Correction*, 169 Conn. App. 444, 455, 150 A.3d 1166 (2016), cert. denied, 324 Conn. 908, 152 A.3d 1246 (2017).

[10] As we have noted, before his criminal trial, the petitioner moved to suppress his confession, claiming that it was not voluntary. See footnote 1 of this opinion. The court denied the motion to suppress. *State* v. *Mercado*, supra, 139 Conn. App. 101 n.3. The petitioner subsequently testified before the jury that his written and videotaped statements "were not the truthful product of his free will," and "[h]e agreed to sign the statements to provide the police with the information they wanted in order to end the police questioning." Id. The jury obviously did not credit his version of events. As the habeas court noted, "the petitioner makes no claim that [the evidence of his confession] was inadmissible evidence at his criminal trial."

[11] In his voluntary statement to Lieutenant Wardwell, the petitioner claimed that he shot the victim with the .223 caliber AR-15 that the police seized from his house at the time of his arrest. He claimed that he used an adapter, which modified the AR-15 to allow it to shoot .22 caliber bullets. At the criminal trial, the unmodified AR-15 was entered into evidence as a full exhibit. The state's firearms expert, Lieutenant Rainone, testified that, in its unmodified condition, the AR-15 was incapable of firing the .22 caliber bullet that killed the victim. Trial counsel did not call a firearms expert.

At the petitioner's habeas trial, Lieutenant Rainone again testified that the AR-15 admitted at the petitioner's criminal trial, in its unmodified condition, was incapable of firing the .22 caliber bullet that killed the victim. The petitioner presented the testimony of a firearms expert, Dr. Harper, who testified, consistent with Lieutenant Rainone's testimony, that the AR-15 admitted at the petitioner's criminal trial was incapable of firing a .22 caliber bullet. He further testified that even if the AR-15 was modified to fire a .22 caliber bullet, the two bullets recovered from the victim's head and the petitioner's backyard could not have been fired from the AR-15 in the condition in which it was seized, unless the barrel was changed. Dr. Harper testified that, with respect to the issue of the murder weapon, he agreed with Lieutenant Rainone's testimony that the AR-15 seized and entered into evidence at the petitioner's criminal trial did not fire the .22 caliber bullet that killed the victim.

When trial counsel was questioned about the admission of the AR-15 at the petitioner's criminal trial, Attorney Eddy testified that trial counsel engaged a firearms expert, but that expert "came to the same conclusion as Lieutenant Rainone," so trial counsel made the tactical decision to allow the state to introduce the AR-15. This allowed trial counsel to argue to the jury that the gun recovered from the petitioner's home was not the murder weapon, even according to the state's own expert. Attorney Simon testified that trial counsel hired a firearms expert, but that his opinions were "not particularly helpful." He testified that he argued to the jury that the seized AR-15 was not the murder weapon, and that trial counsel thought that such an argument was "as good as it got" for the petitioner.

[12] In support of his argument that his counsel's deficient performance prejudiced him, the petitioner repeatedly cites to this court's decision in *State* v. *Coccomo*, 115 Conn. App. 384, 972 A.2d 757 (2009), rev'd, 302 Conn. 664, 31 A.3d 1012 (2011). He contends that, in *Coccomo*, this court "overturned a conviction on the basis that the prejudicial impact on the defendant of the evidence outweighed its probative value."

In *Coccomo*, the defendant was convicted of three counts of manslaughter in the second degree with a motor vehicle, three counts of misconduct with a motor vehicle, and one count of operating a motor vehicle while under the influence of intoxicating liquor or drugs. *State* v. *Coccomo*, supra, 115 Conn. App. 385–86. On direct appeal, the defendant argued that the trial court improperly admitted consciousness of guilt evidence which was more prejudicial than probative. Id., 386, 401. This court agreed, and concluded that the trial court abused its discretion in admitting the challenged evidence, and that because the state's case was not very strong, "the admission of the prejudicial evidence . . . likely tipped the scale in favor of the state."

Id., 402. This court reversed the judgment of conviction and remanded the case for a new trial. Id.

The petitioner's reliance on *Coccomo* is misplaced for several reasons, the most obvious of which being that, on appeal to our Supreme Court, that court reversed the judgment of this court and remanded the case for affirmance of the judgment of conviction. *State* v. *Coccomo*, 302 Conn. 664, 697, 31 A.3d 1012 (2011).

———————————————